ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



CHRISTOPHER P QUEEN )
1250 4th Street SW Unit 103 )
Washington, DC  20024 )
(415) 994-6445, )
)
Plaintiff, )
)
v. )
)
MIDWEST RECOVERY SYSTEMS, LLC, )
514 Earth City Plaza Suite 100 )
Earth City, MO  63045, and )
)
O'BRIEN, WEXLER AND ASSOCIATES, LLC )
16 N Transit St )
Lockport, NY  14094, )
)
Defendants. )
)

Case: 1:20-cv-01530   JURY DEMAND
Assigned To : Chutkan, Tanya S.
Assign. Date : 6/9/2020
Description: PRO SE GEN CIV (F-DECK)

## COMPLAINT AND TRIAL BY JURY DEMAND

Comes Now Plaintiff Christopher Queen ("Plaintiff") for his Complaint against

Defendants Midwest Recovery Systems, LLC ("Midwest") and O'Brien, Wexler & Associates,

LLC ("O'Brien") (collectively, "Defendants") alleges, on information and belief, as follows:

### NATURE OF ACTION

1.  Plaintiff brings this action against Defendants pursuant to the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq* and the D.C. Consumer Protection

Procedures Act, D.C. Code § 28-3901 *et seq.*

### JURISDICTION, VENUE, AND STANDING

2.  This Court has original jurisdiction in this action by virtue of 28 U.S.C. § 1331, because

the matter in dispute involves federal laws arising under the FDCPA, 15 U.S.C. § 1692(k). This

Court also has supplemental jurisdiction over the state law claims because they arise under a

common nucleus of operative fact. 28 U.S.C. § 1367.

3.  Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and

transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See Id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

### THE FAIR DEBT COLLECTION PRACTICES ACT

7. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

8. The FDCPA is a strict liability statute. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). "The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th

Cir. 2011).

9. "A single violation of the Act is sufficient to subject a debt collector to liability under the Act." *Lewis v. Marinosci Law Grp., P.C.*, No. 13-61676-CIV, 2013 WL 5789183, at *2 (S.D. Fla. Oct. 29, 2013).

10. The District of Columbia Circuit applies the "least sophisticated consumer" standard to determine whether a debt collector's communication violates the FDCPA. *Frank v. Autovest, LLC*, No. 17-2773-CIV, 2019 U.S. Dist. LEXIS 169021, at *7 (D.D.C. Sept. 30, 2019) (citing *Jones v. Law Office of David Sean Dufek*, 77 F. Supp. 3d 134, 138 (D.D.C. 2015) (Leon, J.), aff'd sub nom. *Jones v. Dufek*, 830 F.3d 523, 424 U.S. App. D.C. 263 (D.C. Cir. 2016)). This objective standard does not consider "whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the 'least sophisticated consumer' would have been deceived' by the debt collector's conduct." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d at 1177 n. 11 (11th Cir. 1985).

11. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e. *See Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

12. Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

13. Thus, the plain language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse"). 15 U.S.C. § 1692e(8) which prohibits "communicating or threatening

to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

## PARTIES

14. Plaintiff is a natural person residing in the District of Columbia.

15. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

16. Midwest is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

17. Midwest is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

18. O'Brien is an entity who acquires debt in default merely for collection purposes, and who at all relevant times was engaged in the business of directly or indirectly attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

19. O'Brien is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

21. On information and belief, on a date better known to Midwest, Midwest began collection activities on an alleged consumer debt from the Plaintiff ("Alleged Debt").

22. On or about April 23, 2020, Plaintiff requested a copy of his consumer report as published by TransUnion.

23. That report contained erroneous information provided by Midwest and as published and reported by TransUnion.

24. Specifically, the report shows the status of the Alleged Debt as of April 2020 as in active collections, with a past due balance of $232.00.

25. Plaintiff also requested copies of his consumer report as published by Equifax on April 23, April 29, and May 15.

26. Those reports also contained erroneous information as provided by Midwest and as

published and reported by Equifax.

27. Specifically, the reports also show the status of the Alleged Debt as of April 2020 as in active collections, with a past due balance of $232.00.

28. The relevant portion of the Midwest tradeline appeared in the April 23, 2020, Equifax report as follows:

Date Reported: Apr 20, 2020

| | | | |
|---|---|---|---|
| Collection Agency | MIDWEST RECOVERY SYSTEMS, LLC | Balance Date | Apr 20, 2020 |
| Original Creditor Name | CASHNET | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Apr 13, 2020 | Account Number | #########5367 |
| Original Amount Owed | $232 | Creditor Classification | FINANCIAL |
| Amount | $232 | Last Payment Date | |
| Status Date | Apr 20, 2020 | Date of First Delinquency | May 03, 2014 |
| Status | UNPAID | | |
| Comments | | Contact | |
| AFFECTED BY NATURAL DISASTER | | MIDWEST RECOVERY SYSTEMS, LLC 2747 W CLAY ST SUITE A ST CHARLES MO 63301 (855) 232-4407 | |

29. Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed or due a creditor other than Defendants.

30. The Alleged Debt was incurred as a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

31. The reporting of a debt to a credit bureau is a "communication" as the term is defined by 15 U.S.C. § 1692a(2).

32. Midwest reported the Alleged Debt on Plaintiff's credit reports.

33. Plaintiff disputed the debt directly with Midwest by phone on April 23, 2020 and by letter on May 4, 2020.

34. The Alleged Debt remained on Plaintiff's credit reports through May 21, 2020.

35. The relevant portion of the Midwest tradeline appeared on the Plaintiff's Equifax dispute

results of May 21, 2020 as follows:

| The Results Of Our Reinvestigation |
|---|

| Collection Agency Information   *(This section includes accounts that have been placed for collection with a collection agency.)* |
|---|

>>> **We have researched the collection account. Account # –** ▓▓▓▓**5367.** *The results are:* This item has been deleted from the credit file. If you have additional questions about this item please contact: **Midwest Recovery Systems., 2747 W Clay St Ste A, Saint Charles  MO  63301-2557 Phone: (855) 232-4407**

36. Plaintiff also received the results of his TransUnion dispute reflecting May 21, 2020 as the date that the Midwest tradeline was deleted from that credit report.

37. In response to Consumer Financial Protection Agency, Missouri Attorney General's Office of Consumer Protection, and District of Columbia Attorney General's Office of Consumer Protection complaints, Midwest asserts that the Alleged Debt "was placed in our office on 04/13/2020 by our client O'Brien Wexler & Assoc. we [sic] show this account was originally opened with Cash Net on 01/03/2014 and went delinquent on 05/03/2014."

38. By knowledge and belief, Plaintiff, through a call to CashNet on June 5, 2020, confirmed that CashNet has no record of any original account in Plaintiff's name in 2014.

39. As an experienced debt collection agency, Midwest knows that its representations to consumers concerning the legal status of an alleged debt owed, and the consumer's rights under the FDCPA or applicable statute of limitations, are required to be truthful, complete and accurate, and disclosed without any intent to mislead or deceive.

40. Defendants use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

41. As a result of Defendants' improper debt collection practices described above, Plaintiff has been damaged.

## DAMAGES

42. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

43. Midwest had actual notice that the information it was reporting regarding Plaintiff to the various credit reporting agencies was false, deceptive, and misleading.

44. Accordingly, Midwest's conduct was willful.

45. As a result of Midwest's willful actions and omissions, Plaintiff is eligible for statutory damages.

46. Additionally, as a result of Midwest's actions and omissions, Plaintiff has suffered actual damages, including out-of-pocket expenses in challenging Midwest's wrongful representations, frustration and anxiety as a result of the knowledge that Midwest is pursuing its collection strategy, and worry over the repercussions of Midwest's conduct.

47. As a result of the actions and omissions of Midwest, Plaintiff's actual damages also include the illegitimate suppression of his Fair Isaac Corporation ("FICO") credit score and other credit rating model scores.

48. The false information reported by Midwest creates a material risk of financial harm to Plaintiff stemming from the decreased perception of Plaintiff's future creditworthiness.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692g(b)

49. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

50. Midwest's provision of false or misleading information in connection with its attempts to collect the Alleged Debt violated multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692g(b).

51. O'Brien, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of Midwest—the debt collector it retained to collect on its behalf.

52. As a result of Defendants' violations of the FDCPA, Plaintiff has suffered actual damages. Plaintiff is, therefore, entitled to recover actual damages under 15 U.S.C. § 1692k.

53. Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendants $1,000.00 in statutory damages and reasonable fees and costs.

### COUNT II
### VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURES ACT
### D.C. Code § 28-3901 et seq.

54. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

55. Information relating to an Alleged Debt is a trade practice within the meaning of D.C. Code §§ 28-3901(a)(6) and (7).

56. Plaintiff is a "consumer" within the meaning of D.C. Code § 28-3901(a)(2).

57. Midwest misrepresented to Plaintiff in correspondence and to credit bureaus that he owed money on an Alleged Debt that did not belong to him.

58. Midwest's misrepresentations were material and had the tendency to mislead, in violation of D.C. Code § 28-3904(e).

59. As a result of Midwest's actions, Plaintiff suffered damages as set forth above.

60. Plaintiff, accordingly, is entitled to recover treble damages, costs, and fees, pursuant to D.C. Code § 28-3905(k).

## TRIAL BY JURY

61. Plaintiff is entitled to and hereby demands a trial by jury.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

   a.) Plaintiff's actual damages;

   b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

   c.) Reasonable fees and costs pursuant to 15 U.S.C. § 1692k and treble damages, costs, and fees, pursuant to D.C. Code § 28-3905(k); and

   d.) Such other and further relief as may be just and proper.

DATED this 8th day of June 2020

Respectfully Submitted,

Christopher Queen
1250 4th Street SW Unit 103
Washington, DC  20024
(415) 994-6445
*Pro Se Plaintiff*